We've spent considerable time on these cases, and we've determined that it will be to our benefit to start with Mr. Newman from the Department of Labor, then to hear from Mr. Volpert, Mr. Newman from the Department of Labor, and then we will hear from the lawyers for the agencies, followed by the lawyers, Mr. Koch, Scannell, and Sugarman representing the plaintiffs. We'll go in that order. There's one basic issue that floats throughout all these cases, and so we'd like to hear from the Department of Labor first. Good morning. My name is Ford Newman, and I represent the Secretary of Labor who is participating as amicus. We had talked about this previously. It was our intention that I would go first and use ten minutes. I would be followed by Mr. Madden for ten minutes, and then Mr. Volpert would use the final ten minutes in rebuttal. That's all right. That'll work. The Secretary's position in this case is that the finance officers meet the plain terms of the statute, that these finance officers are employees of a retail establishment. Their regular rate of pay is way above one and a half times the minimum wage, and more than half of their pay is in the form of commissions on goods or services. Tell me if I understand this right. If I understand it where the district court made its decision, said they don't sell cars, so they don't fall within the exemption, that's a different exemption? That's 13B10, Your Honor. There are two statutory exemptions. The people that sell insurance and these other add-ons, extended warranties and so forth, don't sell cars, but they fall within the other exemption. We're talking about 7I, Your Honor, yes. That covers commissioned employees. And that's it. There are just two exemptions. They fall within one of them. The district court analyzed it under the other one. The district court, we're participating with respect to the Gieg and the Wickersham cases. And in both those cases, the district court added an additional requirement that we don't see in the statute, and it's not in our regulations, and then it's contrary to opinion letters that the Department of Labor has issued. And that is that the commissions have to be derived from retail sales or retail goods. With respect to 7I, the secretary believes that finance officers are the very type of employee that this statutory exemption was designed to cover. And that is that they're highly paid commissioned employees. And this is very important, I think. They work in a retail business where the hours worked and the amount of pay can fluctuate significantly depending on consumer demand. And they're able to make up for the down times by working harder and for longer hours during the busy time. So in that way, 7I actually works to the benefit of the commissioned employee, because their employer doesn't have the incentive of limiting the hours that they can work during these busy periods. Now, we think that the secretary believes that the proper test as to whether 7I applies is not whether the goods or services were retail, but whether the commissioned employee is employed by a retail or service establishment as defined in the statute. And we have regulations that specifically interpret 7I. And those regulations are located beginning at 779.410 and they run through 421. And 779.411 says that an employee must be employed by a retail or service establishment, and that the term is defined in Section 13A.2, which has subsequently been repealed. But the definition remains in effect. And the regulation in the 410 series also says that the application of that definition is considered at length in subpart D of part 779. And that's where 779.308 is located. And that's where that regulation comes into play, because it addresses what it means to be employed by an exempt establishment. The employee must be employed in activities within the scope of the exempt business. And that, of course, is where we come to disagree with the district court's analysis under 779.308. How do you deal with a funeral home exception for employees who perform any work in connection with burial insurance operations? Well, I believe that that's consistent with our position and in some ways kind of proves our point, because in that situation what you really have and what the regulations clearly contemplate is that companies can operate separate establishments, retail establishments and non-retail establishments. The retail establishment would be entitled to 13A.2 exemption, whereas those employees who work in the non-retail establishment would not. What that regulation recognizes is that burial operations are really a separate establishment. And one of the briefs that was filed by the appellees, they actually cited an Eighth Circuit case for the proposition that the funeral services and the burial insurance sales operation are actually two separate establishments. Well, actually the 369 instructed, among other things, that there is no retail concept applicable to the insurance business. And that's correct. But don't we exactly have plaintiffs here who are engaged in aspects of the insurance business? Well, but again, let's go back to what the statutory test is, and that is whether they are employed by a retail or service establishment. And I don't think I can say it any better than the Tenth Circuit did in the Rockies Auto case, which is a 13B10 case much like the Howard case and also cites the Howard case. And it says that even though finance employees are not primarily engaged in obtaining contracts for the sale of cars, they play a role that is integral to the business of selling cars. I understand that part of the argument. I'm sorry? I say I understand that. And that's true here. Everything that they do and everything that they sell relates specifically to the sale of cars and exclusively to the sale of cars. It might be helpful if we could look at an example where 779.308 would preclude applicability of Section 7I. Let's go back. That regulation at 308 cites the Davis v. Goodman Lumber Company case, and that makes it clear that if a company operates a non-retail business that is separate and distinct from its retail business, that the employees working in the non-retail business do not fall within the retail or service establishment exemptions. Now, that involved the sale of lumber in a manufacturer of rollers or a cotton mill. Well, you can sort of apply that to the situation here or to sort of an analogous situation. If one of these auto dealers, in addition to selling cars, operated an insurance agency on the same premises where they sold car insurance, and they sold car insurance to the general public, to people who already own cars, and people who would actually walk into the premises and walk by the cars and say, And the commission salesman there would sell that particular person car insurance. They wouldn't fall within the 7I exemption because they would be working for an establishment that would be separate and distinct from the retail establishment. And we think that that's a consistent theme throughout the regulations, and that's the situation that 779.308 is designed to address. And you find that sort of Davis distinct? Separate and distinct. Yes, you find that in 369 and 779.369, when it instructs that where the establishment meets these requirements, that is, of an exempt retail or service establishment, generally all employees employed by the establishment will be exempt, except any employees who perform any work in connection with burial insurance operations? That's correct, because as that regulation says, that's basically no different from selling life insurance. And we certainly know from the Kentucky Finance case that those type of activities and those type of operations lack a retail concept, is the way that they put it. If I could, I'd like to quickly refer the Court to another example, which is actually in the regulations at 779.321C and D. And that regulation says that an employee engaged in construction activities is not employed within the scope of his employer's otherwise exempt retail business. Again, there you have two different establishments, an exempt one and a non-exempt one. And it says that there is no retail concept with respect to the construction industry, just like the insurance industry. And such an establishment would be considered wholly separate and distinct from the retail operations. But the regulation goes on to say that where a retail business, in addition to selling goods, also installs them at an extra charge, the construction activities involved in the installation would be considered incidental to a retail sale and therefore considered exempt activity. And that's what we really have here. We have activities that are integral, incidental, and in many cases essential to the vehicle transaction, to the retail transaction. So we think that under a fair reading of the statute and the regulations, that the activities, sales activities that these finance officers engage in clearly fall within the scope of a retail auto dealership operation. They don't work for an insurance company. They don't work for a finance company. They work for an auto dealership. And that's all the statute requires. In the Chalupa case, Magistrate Hubbell issued a rather nuclear attack on the DOL opinion letter and pretty much decimated it, said it's wrong, solicited under improper circumstances, it's no good, it's misleading, it's legal analysis, it's haywire, and then Judge Jones just sort of brushed it aside. What do you have to tell us about that? Well, I can tell you that this is one of the important things that the Secretary of Labor does, is issue opinion letters with respect to matters that were outside the public rights and request guidance on how to comply with the Fair Labor Standards Act. And what we try to do is try to provide them guidance through opinion letters. And this was not the first opinion letter that we had issued on this matter, and it's not the first time that we'd ever had contact with the National Auto Dealership Association. Years ago, they had actually sent in their manual, which they distribute to their dealerships, to provide them guidance as how to comply with FLSA, and we actually reviewed that and sent it back with respect to their instructions concerning 7i. We didn't have any disagreement with that. And I want to say this, that even if there hadn't been that opinion letter, we still monitor private litigation at the Department of Labor. And when we see cases where we think that the district courts have got it wrong, we often participate as amicus, or ask to participate as amicus, to try to explain to the court what the Secretary's views are as to the correct interpretation of the statute. Legally, what deference are we required to give to your opinion letter? Well, it's Skidmore deference, Your Honor, but we think it's considerable deference in this case because the matters clearly fall within the Secretary's expertise, and we think that the opinion is very well reasoned, as we think that our brief is very well reasoned on this issue as well. Is Skidmore deference the same thing as Auer deference, A-U-E-R? I believe Auer, yes, I believe it's generally, I think Auer was talking about deference to provide to the... It was deference to the Department of Labor when it... The position we took in a brief, I believe. I mean, it's not, obviously we're not arguing that it's binding, as would a regulation that had gone through notice and comment, but we believe that the court should give it considerable deference because we think it's a good, solid opinion letter. Mr. Newman, let me inquire, and maybe you'll tell me as none of my business, but I'm kind of interested procedurally. When the Secretary enters a case like this as an amicus in the Court of Appeals, concerned about an assertively erroneous district court decision, does your appearance on behalf of the Secretary, does that require the assent of the Solicitor General, or is that something that's within the purview of... No, we have independent litigating authority under the Fair Labor Standards Act. So it is only with the permission of my boss, the Solicitor of Labor, and also with the concurrence of the Administrator of the Wage and Hour Division, who is charged with administering the Fair Labor Standards Act. I've gone way over my head a lot of times, so if there's no further questions, I will... Thank you. May it please the Court, my name is Patrick Madden of Preston Gates & Ellis, on behalf of the dealership Hazelwood, U.S. Pontiac. One thing I'd like to address before I get into the issues I really wanted to talk about is the Court raised the issue of the funeral home exemption in Section 779-369. And if the Court turns back a little ways in the regulations, 779-353 notes that all of the sections postdating that are industry-specific studies that are based on inquiries as to those industries and the practices within those industries. Therefore, when we talk about the funeral home discussion, you need to keep in mind that it's based on the particular facts and understandings within that industry, and doesn't necessarily carry across the board to other industries. I would note that the funeral home industry is distinct from a car dealership industry. First, and most importantly, funeral home and burial insurance operations are technically distinct. You don't sell insurance when you sell the goods. You don't sell insurance on the coffin or the headstone. You sell insurance beforehand, and so they're functionally distinct. And if, in fact, you look at 369, the section dealing with burial insurance is labeled, Subsection B is Burial Insurance Operations, because it's talking about it as a distinct operation. In contrast to this, finance managers sell goods, or sell insurance, sell other products, arrange financing in the context of the sale of a car, therefore providing the distinction in this context. I would also note the only case that's really addressed the issue with funeral homes is the Daniel Funeral Home case, the 8th Circuit case. And that case dealt with two separate companies. It dealt with a funeral home operation or company, and a burial association company. They had employees that were sent across the lines to both operations, and what the court found was they needed to be treated as one establishment because they were sharing employees. And what it concluded was they couldn't qualify for the retail and service exemption because the sale of insurance was construed as being involved in interstate commerce. And at that point it was a small retail establishment exception, and it was focused on whether or not you were in retail commerce. Thus, the focus of that decision was that you do look at them as a single establishment when you're sharing employees and sharing operations. I'm sorry, which case is this you're referring to? That is the Daniel Funeral Home case. I can give you the citation to it. It's Gilreath v. Daniel Funeral Home, Inc., 421 Fed 2nd 504. Finally, Your Honors, I'd simply note in this regard, and I don't understand why this wasn't included in the plaintiff's briefing or the briefing in this case, is if you turn two sections later, there is a case study on auto dealerships, specific auto dealerships. And that case study in section 779-371 talks about particular activities at a car dealership that do not qualify as retail in nature. And it talks about sales for retail, fleet sales and leases, sales and leases for heavy trucks, and those things do not count as being retail in nature. At the same time, the regulation specifically states that the way you take that into account is not to say that those people who do those types of sales are eliminated from the establishment, but it says that you subtract those activities from the 25 percent in the 75-25 test for the establishment as a whole. Thus, it clearly indicates that you don't set aside somebody based on their individual duties. Now, going back, I did want to raise two issues in this case generally, and the first one is just a general policy note. And I think everyone uses the term exemption to apply to 7i, but it truly is not an exemption from the Fair Labor Standards Act. Section 213, if someone falls within one of those exemptions, they don't have a minimum wage guarantee, they don't have an overtime guarantee. In Section 7i, it's an alternative method of paying people and giving them a higher safety net. They're guaranteed one and a half times the minimum wage from the very first hour they work. Plus, they're guaranteed the opportunity if they work hard to make more through commissions. That's why Judge Posner in the MESHMET case said that people under this exemption are, in fact, the types of people you don't need to strictly construe the statute for. The other thing I'd like to note is, and I think Mr. Newman covered this statutory piece fairly well, but in terms of Congress, Congress knows how to limit an exemption based on duties. They did it in Section 213b-10, the auto dealer exemption, where they said that you have to perform certain limited duties, and it has to be these types of positions, salesman, partsman, and so on. 7i doesn't contain those types of limitations. But more importantly, if you look at the regulatory scheme, there is nothing in the regulations that would suggest that, in fact, Section 7i was intended to create a duties requirement. And there are two telling points in the regulations that show this. First, although it's not in the briefing, I think the court probably knows there are white-collar exemptions. There used to be ones that had 80% tests and 50% tests. Now we've just recently changed them, and there's a 50% test. There are a number of other exemptions that have percentage tests. If there's an individual qualification or test that each person has to pass, where is it in the regulations? What in the regulations says that a person needs to perform 20% or 50% or 75% retail and service activity before they qualify? Now this is why that's very important. Virtually every salesperson at some point may be selling insurance or may be selling or arranging financing. A salesperson at Nordstrom's or J.C. Penney may ask you to sign up for a credit card and get a fifth or a commission based on it. If they make that offer, does that disqualify them from the 7i exemption? A salesperson at Sears or Circuit City or GoodGuys may offer a service contract or an extended warranty. Does that disqualify them from the 7i exemption? I would hope not. But there is no guidance in the regulations that draws lines as to what percentage of activities have to be attributed to any particular form of sale. And the reason why is because the department has consistently found that this is not the proper road or inquiry. The other thing that's most telling is the record keeping requirements for 7i. And if the court looks at section 420, it establishes a record keeping requirement and refers you to section 516.16. And that record keeping requirement requires that an employer keep track of how much was earned through commissions and how much was earned through non-commissions. It does not require an employer to delineate the source of the commissions. If, in fact, the intent was to base the exemption on the types of commissions or the source of commissions, we would anticipate that the department would have in the regulations required an employer to track that information. And they did not do so. In light of that, Your Honor, and I see my time is running out as well, I'd encourage you to look at the undisputed fact, at least in the Wickersham case, Judge Burgess found that every criteria in 7i was met. He then said, we need to ask whether or not this employee is performing the duties to qualify for the exemption. It's the wrong inquiry, an additional inquiry that does offense to the statute itself. Thank you, Counsel. One question before you sit down, if you will. Could you tell me again the name of, you referred to an opinion of Judge Posner's, but I'm not sure I know what it is, and of course we work at great risk if we ignore an opinion by Judge Posner. That was a MESHMET decision, dealt with service waiters, and the citation on it is 825 Fed Second 1173. Thank you, Counsel. Thank you, Your Honors. Next. Our intent, Your Honor, is to have a simple fair and certainty. All right. That's fine. May it please the Court, I'm Jackie Koch, I represent Mr. Geek in this case. Keep your voice up, please. Yes, Your Honor. Excuse me. The Section 779-308 seems to be at the center of this controversy. It seems very clear that DOL believes that it does apply. It sets a standard that is not as simple as you consider only whether or not this employer meets the task. It looks at the employee in a specific way. It says whether it's employed by a retail or service establishment in activities within the scope of the establishment's exempt business. All of the other kinds of statements that have been applied by defendants in different words, not these words. Counsel, it seems to me you have three hurdles to jump. One is, if we just read the statute, the only meaning we can see is the one the Department of Labor has given it. That's the end of it. Next is, if we think there's some room for interpretation, can the Department of Labor's letter of interpretation, its letter to somebody saying what it means, is reasonable, we have to defer to the letter, the opinion letter. And third, that was under Skidmore, I think. And third, under Hauer, another Supreme Court case, we have to defer to the amicus brief from the Department of Labor, unless it seems contrary to the plain meaning of the statute. And that strikes me as a tough road to hoe. I'm visualizing myself jumping each of those hurdles. In terms of the deference to... I mean, frankly, my thought coming into it was, with all that deference I'm supposed to give, and when I read the statute, yeah, it looks like a pretty reasonable interpretation anyway. I feel like I'm all done. So tell me why I'm not. Because the... for several reasons. First of all, this statute is protective of employees. I don't know the reference to Judge Posner, but with all deference... That's all general form. Yes. In any event, it is true that if you just read the statute, it sure sounds like they have a winner because it makes this very generalized reference. However, that isn't what the Secretary of Labor's regulations say. And as I heard counsel for the department, he agreed that those interpretive regulations have more force than the letter. The regulations would rule. And, in fact, the amicus brief talks about the regulations and talks about 308. The problem here is how do you apply it? And it simply is not consistent to say that we have a regulation here that applies to this statute, and we're going to ignore it. I mean, in effect, they're doing exactly what they say we should be doing. In what sense is the regulation being ignored by the Secretary's position? Why doesn't 308 carry forward? Because 308 does relate to the employee, and that's what this whole discussion is about, is whether or not you're just simply going to look at the employer or are you going to consider what activities the employee is doing. And 308 very specifically says you have to look at whether or not it's within the scope, the activities. Is the employee employed in activities within the scope of the establishment's exempt business? I didn't have any trouble with that because I thought, well, whenever I bought a car, before they give me the car, they say, oh, you have to talk to Mr. So-and-so. And he tries to sell me all this nonsense, the undercoding and all this that I don't need, and the extended warranty, which I may get. And he tries to sell me financing that I don't want. And see, that's just part of buying a car. I've never bought a car where they didn't try to do that. And for me, this is deja vu all over again because I argued the first case, and that was the issue in that case. Because in that case, the question was whether or not they were, in fact, automobile salesmen. And the answer from the Ninth Circuit is no, they're not. It looks to me like what they do is they're just divvying it up. First, the salesman who's selling me the metal gets as much as he can from me for the metal on the tires. And then another salesman gets as much as he can from me for the extended warranties and the undercoding and the scotch guard and all these other things to see if he can get another $500, $600 out of me. Plus, if he can place a loan, he gets a kickback from the lender. I just don't see how you can separate it from selling a car because that's how they organize selling a car. But that is what the court did. It is separate, and it deals with insurance, and it deals with financing, both of which are not covered as retail activities. Insurance, if I didn't have car insurance already, then I might say, wait a minute, before I can pick up the car, I've got to go over to an insurance agent and find some car insurance. That would be different. I'd go to a different business. I'm sorry. I'm talking about financing. Excuse me for misspeaking. I can't hear you. I'm sorry. I meant financing. Excuse me for misspeaking. In terms of financing, that is not retail. It's not within retail. And that's the very issue here. Whether or not the fact that he's engaging... Well, if I go somewhere else, like if I go to my bank and borrow the money, it's not. But if the second guy at the car dealership says,  And I say, I'm going to write you a check. And he says, no, no, don't do that. Why don't you borrow and buy it on time? We've got great deals. Then it seems like it's not a separate business. Let's see. What opinion was it that said it was? That's in the regulations that it defines what retail operations are. And I don't think there's any issue or question that financing is a retail operation. The question from their perspective is whether or not the statute applies a test that simply has you define the employer without regard to what the employees are doing. And from their perspective, it doesn't matter. The problem is that the regs actually on their face say that it does. And what they say in the opinion letter is different than what the regs say. When you say what the regs say, you're talking particularly about 308. Is that right? Yes, Your Honor. Do I understand it to be your argument that the phrase within the scope of its exempt business is a phrase that precludes the financial aspect of the transaction? Correct. But that, of course, assumes the conclusion as to whether that's part of the exempt business or not. Well, and that's one of the reasons to look at other regulations such as the funeral home, which had an analogous situation of you go, you buy a plot, and somebody sells you insurance on the plot. You can make all of the same arguments about the car dealership and the funeral home, although I guess we've had more experience with car dealerships than funeral homes, at least speaking for myself. Well, I think Judge Kornfeld's questions put to you suggest there are a range of things which your client and others in that role perform, but they all seem to be a part, for most of us, of the transaction that goes on when you go in and purchase a car. And it's a little hard for me to see how one slices that away. Or if one does, if one says, well, financing is not a part of the exempt business, if I go to that dealer and say, no, I don't need financing. Here's my visa card. Just put the charge on there. Isn't that a conversation about financing? And you probably would deal with the finance writer when you did that. Yes, it is a conversation about financing. Does it depend on whether it's the Mr. Gig or the Mr. Somebody Else who has already shown me why it's to my advantage to buy that very expensive car, much more so than I anticipated when I came into the showroom? And probably your visa limit wouldn't go that high. Yes, it does depend on that. In terms of what the individual employee is doing, if one regards 779-308, with regard to the statute itself, this circuit has said that you cannot stretch it to the breaking point. I think that was in Burt's, the concept that you only look at the employer as opposed to looking at what the employee does. I thought what you used that within the scope language for was an employer runs a little exempt business to sell Studebakers. You don't see a lot of Studebakers anymore, so it's a pretty small exempt business. And he also has 500 people painting cars at $50 a car, cheap car repainting, and he pays them all $3 an hour. Well, they're not within the scope of his little retail business, which is the exempt business, so he has to pay that minimum wage in overtime. I thought that's what it was for. And I would cover that, but it doesn't necessarily end there. How does, I mean, that indeed is part of the issue. You're saying you can't have divisional labor within the car dealership if you want to keep your exemption, as I understand it. I'm thinking some of the guys there are car nuts, and they can talk to you about cylinders and acceleration, and other people are better at the paperwork, and they can talk to you about financing, and that's how they divvy it up. They divvy it up very distinctly between people who sell the cars and between people who do the finance writing. That is what they do. The cases that you bring to our attention I don't think help you very much. In the Goodman lumber case, for example, it was the sale of lumber, but there was also a separate department that manufactured rollers for cotton mills, so you can see the difference in the distinction there. In Northwest Airlines v. Jackson, they had a separate modification center. You can see the division there. In Wabash Radio, there was a separate radio and telegraph facility, so you can see the differentiation there. In Walling v. Connecticut Company, they had a separate power plant, so you can see the separation of the distinction there. But here, you really have functions that are integrated into the process of selling automobiles. Doesn't that make it much different than the other cases that you refer to? No. An answer that doesn't surprise me. Why not? No, because it doesn't have to be that extreme. Yes, those are all examples of what could happen, but that's not a requirement, and in terms of the rule, it doesn't talk about you have to have these two separate things. It says that the employee's work has to be within the scope of, quote, the employer's exempt business, the activities. His activities have to be within that scope, and it's presupposed under the statute that not all the activities of the employer are going to count as part of that, because you only have to have 75%. So what it comes down to is whether or not you're going to look at what the employee does, because quite frankly, if you want to, you can talk about virtually any two businesses put side to side and say, well, you know, making those shoes really does help their other customers who are coming in to bank with them. That's where the slippery slope is. If you don't look at the employee, you have a slippery slope. Thank you. Thank you very much, counsel. Next. I can't hear you. My name is John Scannell, and I'm representing Wickersham. I want to defer to the other co-counsel. This has taken longer. I don't want to cut into his time. Well, we're not going to clobber anybody here with a clock. If somebody has something they want to say, we're going to let them. Just, you know, don't waste time. But that's fine. Thank you. May it please the Court. My name is David Sugarman, and I'm counsel for Schlupka et al. Cases are a little different, and I think we need to draw some distinctions. The Secretary did not intervene. Are there any differences in Schlupka that are material to the result? Yes, there are. Would you like me to get to those first, Your Honor, or go back to some of the issues that you specifically raised on this issue of division and statutory construction we haven't talked about? I don't care what you do first, but I don't want to miss what's material to the result. As long as I have the time to deal with them, I will talk about the specific differences in the Schlupka case and why we believe the Secretary chose not to intervene. I want to start with a question that seems to be bothering the panel about this notion of division. In other words, in Davis v. Goodman Lumber, it's very easy to say, well, you know, selling lumber is very different than rollers. Sure. But there are a couple things that are clear lines of division. And, in fact, one of the things I think the panel needs to be mindful of is that FLISA exemption is a process of drawing distinctions. When these people work, the finance and insurance people, they are licensed to sell insurance, and they are regulated by the state in the sales of insurance. They are earning commissions only if they succeed in convincing Judge Kleinfeld to buy undercoating, to buy insurance, to buy finance. They are not making anything on the car. They are selling insurance and finance separate from the car. Well, it's not all that separate. The way they do it, once you've made your deal with your salesman, you don't sign anything, he doesn't sign anything, no money changes hands, and you don't get the keys. Instead, he just sends you into the other office. And that's where you make the deal, both for the TIN and for the head-ons. There's just one piece of paper, one deal, one check for both. Well, that's from the consumer side, perhaps. That's how it appears to the purchaser. But from the state, from the employer, and from the salespeople, that's not at all how the business works. What happens, first of all, is that you can buy your car without insurance. Second of all, these people sell product independent of cars. When you say insurance, you mean things like the insurance so that if I die, the car dealer gets paid anyway. Thank you, Your Honor. Credit life, yes, or disability. You don't mean my liability insurance. No, I do not. And to the extent we've been talking generically about insurance, I should be a little more specific. You mean the credit insurance. We're talking about credit insurance. But that is still, Your Honor, it is still regulated by the state. And the record is very clear, at least in the Chalupa case, that each of these people have to be licensed by the state. I have to step back for a minute and look more at this notion of drawing distinctions. Because the Ninth Circuit has made very clear that you construe the exemptions narrowly against the employer, and they are to be withheld except as to persons plainly and unmistakably within their terms and spirit. Now, what I hear the panel saying is, well, you know, apparently the department thinks they can do it this way. Therefore, maybe we should defer. And one of the things you need to look back at, at least as to the Chalupa case, where our AUER deference is not going to play, because we do not have an amicus brief in that case, is the letter interpreting this, that as I think Judge Trott pointed out, was blasted by magistrate Buble. And in fact, Judge Jones, Judge R.E. Jones, a couple of times- I couldn't see what was the matter with it. I mean, I read the magistrate's opinion, and he says, well, the district court in Wickersham went the other way, and I'm going to follow Wickersham. Reasonable thing for a magistrate to do, to follow a district court opinion. But it's not like he showed that the reasoning in the opinion letter was ridiculous. Well, I think he was concerned about both the content and the process. And I want to focus on the content for a moment, because every authority that they rely on in the opinion letter is an establishment exemption, amusement parks. In the amusement park setting, Your Honor, every person that works there is exempt. It doesn't matter what they do. It doesn't matter how they're paid. And that's a very different type of exemption than what we have in play here. This is not, as the Secretary wants to treat it, an establishment-based exemption. Not every employee who works in this facility is going to be subject to exemption. And what's problematic about what the Secretary's position is taking here, what position the Secretary is taking here, is that it ignores 308, a regulation that has been on the books. It's not ultra-various. They're not saying it doesn't apply. They're just saying that the language employed by, which is the statutory phrase in 207-I, employed by, they define what by means. I don't see why it isn't establishment-based. It says by employing any employee at a retail or service establishment if, and then it has three criteria, he gets one and a half times minimum wage, more than half of his compensation is commissions and so forth. Well, that alone takes it out of establishment, but the regulation also- It looks as though the exemption does go to people who are employed by that kind of establishment rather than people who engage in a particular type of work. And that's where I want to work with you. I want to work with you from just that point, Your Honor, because employed by, that concept in 207-I, is specifically defined by the secretary in 779.308. OK? And I believe that that's in the red brief reprinted at the end of page nine if you're looking for the text of 308. OK. So, what 308 says is employment requires that it be in activities within the scope of its exempt business. OK? Under the secretary's current construction, that they're advancing in this case, the person who answers the phone, the woman who types up purchase orders, the guy who washes cars, who are all employed by this dealership- They are. And if they get more than one and a half times minimum wage and more than half their compensation is from commissions, then it looks to me like 207-I exempts them. If they don't, it doesn't. But if they don't, it doesn't. And I've never heard of a receptionist or car washer getting questions in one of these cases. And it's a little bit absurd to illustrate the point. But I think 308 says exactly the opposite, because I think activities come into play, activities within the scope of the exempt business. Car washing is not within the scope of sale of goods and services. Insurance sales under any type of analysis or finance under any type of analysis- Why not? Because they're purely lacking a retail concept from the beginning. The most- The core thing in a retail transaction is exchange of goods for the consideration for the goods. And the consideration for the goods, where the goods are expensive, is probably more often than not some sort of creditor. Well, but we've said from the get-go that under FLISA, the credit and insurance are not part of the retail concept. And so you used the question to my colleague about, well, gee whiz, if I arrange financing here in the dealership, it goes with the car. But if I go to the bank, then you have a better point. But the reality is the activities test in 308 says exactly the opposite. And my concern with the letter, and my concern with deference to DOL on this, is that they are completely ignoring 308, at least in how it's been interpreted and how it's written. You attack the DOL letter. Yes, Your Honor. Other than because you think that it's based on faulty analysis, what's the problem with it? The additional problem is you can see what happens when these things are the product of litigation. DOL, and this is in the Chalupa record, DOL takes defendant's information and misses, doesn't check with plaintiffs, there's nothing in the record that indicates that they have both sides of the story, factually, and they make certain assumptions. For example, DOL assumes in its letter that every plaintiff was paid for every week of work in excess of 1.5 times. Every plaintiff? I'm sorry. I wasn't talking about plaintiffs. I'm sorry. Every, thank you, Your Honor, every F&I salesperson, plaintiff was inadvertent. Of course they didn't mention plaintiff. They were talking about every F&I salesperson, okay, was paid 1.5 times for every week of work. Sure, it assumes that. Right. Otherwise, what's the problem with that? The problem with that is at least in Chalupa... Because then it doesn't cover anybody who doesn't. Correct, and the problem with that is in Chalupa, that was not in the record. We never had that... It doesn't make any difference. This isn't supposed to be a resolution of a case. Well... And you say here that they didn't mention the litigation. Well, the only representative... You've represented this opinion as not on behalf of a client or firm which is under investigation by the Wage and Hour Division. I mean, this is bread-and-butter stuff that the agency seems to do. I don't find any deficiency in it in that respect. What good is it if you can't ask it for answers to questions when Congress and the law says they're supposed to be able to help you? My understanding, and perhaps I'm wrong, toiling in my little corner of the world, is that when it's being asked for purposes of litigation, you have to be a little more concerned as the agency... I think what the point is, they're not an Article III court. Right. They don't need a case of controversy. They can issue advisory opinions. As well they shouldn't. It's important that they can, and they shouldn't be bound by Article III, and that's not my point at all. What case says when there's litigation out there, somehow they're disabled from telling us what they think? I don't think they're disabled at all. But I think what Judge Jones said in reviewing Magistrate Hubel is I've considered the circumstances and I've considered the content, and it lacks the power to persuade. Judge Jones didn't say very much at all. He just backhanded it. It was one sentence. That's correct, Your Honor. Bam. Twice. Two different backhands. Two different cases. Or two different opinions. Excuse me. Let me turn now to the issues that are different, unless you have any particular questions on 308. Thank you. In Chalupka, as I say, there was an assumption by all parties- there was an assumption by Magistrate Judge Hubel that it had been proved that every week of work these folks got 150% of minimum wage. If you look at the record, that is not the case. What happened was the dealers moved for summary judgment, and they relied on their concise statement of material facts on summary judgment, in which they said in their concise statement every plaintiff's regular- I'm summarizing. Every plaintiff's hourly wage was more than 150%. As far as I can tell, you didn't contest that. Well, we did, Your Honor. We didn't contest the amount per hour. Right. What we did contest, specifically, in the response to concise statement of material facts, was that was not the regular hourly wage. And that's where they have a hole in their proof that's pretty fatal. The other issue I want to talk to you about is leases and sales. Defendants in Chalupka et al. have admitted that if a lease is not a retail sale, they cannot prevail. In other words, they don't meet the 75% test. And the question, at least presented by the Chalupka case, is whether a lease is a retail sale. You need to look at the lease transaction. What happens is the car goes to the holder, and title is transferred to the holder, the lessee rents the car for a fixed period of time, and at the conclusion of the lease, the lessee can either buy it or it goes back to the lesser. And I believe that the evidence in the record is it's invariably sold after that. It's our position that- Is this in the record? Yes, Your Honor. The facts on leasing are set out beginning at page 4 of the red brief. I didn't catch the argument. Let me find it, Your Honor. That would be beginning at page 12 of the red brief, Your Honor. Oh, I get it. Okay, thanks. Okay. Are there any further questions at this time? No, thank you. Thank you. Mr. Volpere? Yes. I don't know whether that's a promotion or a re-promotion. I think it's a promotion. It sounds French. Your Honor, a lot of the questions about the- or, Your Honor, there's a lot of questions about the meaning of the statute and the like you have already covered, I think. The things I'd like to bring up have been covered in your questions, and I could spend a lot of time here pointing out that we start out with language, a clear and plain language of a statute, and nobody wants to talk about- on the other side wants to talk about the plain language of the statute, and then they want- you know, you have to not only ignore that, but you have to ignore the Department of Labor's clear, well-reasoned explanation of why the plain language of the statute means what it says, and then they want you to resort to arguing about Section 308. And it's almost as if we are- it's almost as if they're treating this like the statute is Section 308, and we're using, you know, 207-I just kind of occasionally to try to interpret 308. Now, I know that the- I think you can only do that with legislative history if you find an ambiguity in it. Yeah. Yeah, exactly. And I think the Department of Labor- I know both the Department of Labor and the Attorney for Wickersham, both of whom are far better schooled in the specific regulations, quite frankly, than I am. Both of them assume that Section 308 applies to the interpretation of Section 207-I. But as we laid out in our brief, and I don't want to make a big point about this. I certainly don't want to get into an argument with Mr. Newman on this issue. But I do just want to point out that, as Mr. Newman said, there are regulations that specifically apply to 207-I in subchapter E, and none of those regulations say anything about whether or not someone is working within the scope of the work of the exempt establishment. Now, one of those regulations does say that since we are incorporating into 207 the former 213-A2 definition of retail or service establishment, that the regulations that apply to the definition of retail or service establishment have some bearing, of course, on interpreting 207-I, which uses that phrase. But I would just point out to you that, and I don't want to make too subtle of a point here, but 308 does not go to the definition of retail or service establishment. 308 talks about whether someone is employed by a retail or service establishment. And when you think about it, because of the safeguards that are built into section 207-I, a 308 problem is rarely going to exist. If you have a situation like 213-A2, where it is establishment-based and all employees of the establishment are subject to an exemption, of course, crafty employers are going to try to put a manufacturing facility out in the backyard and say they're all one facility. So you have a lot of issues like employed by. But as I think came up in one of your questions, you don't have that problem in 207-I. You could maybe come up with some wild example that I haven't thought of. But for the most part, you're not going to have that problem because you can't hide an assembly line person in the back of a retail or service establishment under 207-I because they have to be commissioned employees. I'm not sure that I understand the thrust of your argument. Are you putting 308 off in the wings? Are you regarding it as unnecessary to comply with 308? I don't think that 308 is necessary to comply with 207-I. I mean, I think it – let me put it this way. It may be too precise of a point. No, it may be too precise of a point, but I think 308, under interpretation of the regulations, 308 does not directly apply to interpretation of 207-I. Now, however, that's not to say that if somebody could – if you have two separate retail or service establishments, one could certainly look to 308 by analogy and say, well, here's how you might be able to determine whether you have two separate establishments. But the important point here – Do we? Pardon me? Do I need this argument? Well, I don't think you do, no. Good. Could you help me with the differences with Chalupka? Pardon me? Chalupka. Now you have your Chalupka. Oh, my Chalupka. Leases and sales. Apparently, you don't meet the 75 percent volume threshold unless you include leases or leases sales. Well, I'll just go back to what we – Do we need to reach that? Well, I don't think you need to reach it because I don't think there's any fair argument that that was ever raised in the district court. The district court considered that, the one-and-one-half times per week, to be an undisputed issue for the one-and-one-half times per pay period. And the first time we hear about this is in the reply brief. This meaning leases and sales or one-and-one-half times? No, the notion that somehow we've not divided up our sales into individual weeks so that you can actually make a determination about whether or not in each week they're being paid one-and-one-half times the minimum wage. There were allegations made in the complaint in Chalupka, as we point out in the reply brief, that these were highly paid employees and for relevant periods of time they were making $50, $60, $80 an hour. And the court treats as undisputed the fact that we meet the one-and-one-half times requirement. Everybody standing in this room knows that we meet the one-and-one-half time requirement. We now hear in the respondent's brief, oh, we came up with a fancy new argument. Maybe you didn't break it down by week. Now, that argument, of course, had it been made at a previous time, would have resulted in, if there is any problem with the record, would have resulted in the breakdown by week. But it comes too late, and it also strikes me as a little bit, us, as a little bit disingenuous because, as we also point out in the reply brief, that issue, because after summary judgment it went to trial, and there was a trial on the damages. And as part of the trial in that case, it was proven that, in fact, we meet the one-and-one-half times requirement for each week. So this is laying in the weeds. Now, I know they said something about there was something in their response to our statement of material fact, but, well, I'll tell you what, that's a pretty thin reed to be relying on to try to make that argument. There's certainly no assertion I can find in any memorandum, anything they said in the district court, that would have brought that argument to the attention of the district court. Precisely what are you asking us to do on behalf of your clients? We're asking you to apply 207-I and hold that the F&I managers are not entitled to overtimes. The answer to that seems too simple, so I'm afraid maybe I've missed the point. And that results in what? You mean in terms of a... We make that hold, and what does that do? Well, the court should have granted our summary judgment motion. Is that what you're asking? Yes. Yes. Yes, the court should have granted our motion for summary judgment and denied the motion for summary judgment. So are you asking us to enter summary judgment on behalf of your clients, or remand it for that purpose? Yes, I think that's what we're asking. And what are you saying with respect to the leases not sales issue? Are you saying that that was an issue that was weighed by your adversary? I think you said that's not an issue that we need to reach, but I wasn't clear why. Your Honor, I can't recall quite frankly why we said in our reply brief why it didn't have to be reached, whether it had to be reached. I do know that the argument itself has no merit. The one thing we didn't point out in our reply brief in that regard is that it's a sale for resale. And everybody knows what that's going for. That's going for the idea of wholesale. And they're looking for a situation where I am selling something to another party for the purpose of that other party flipping it, or reselling it to somebody else in a relatively new condition. Now, if I understand the argument, what the plaintiffs are trying to say is that somehow, because ultimately after the person uses the vehicle for two or four years, the lessee, because ultimately that may come back and will ultimately be sold, that that somehow can qualify it as a sale for resale. But the issue is not what we might do with the property way down the road. The issue is precisely the sale, the fact that we're selling it, and the purpose of the sale is for somebody to drive the car just exactly like if you didn't have a lease involved, if you had the sale of the car involved. I'm sorry, Your Honor, I can go back if you want and look in the reply brief precisely what we said about waiver on that issue. I think in your gray brief, what you said about waiver on the one-and-a-half times for every week of work is you quoted the complaint and said that what they claimed in the complaint was judicial admissions, but I don't think you spoke to the leasing issue in your gray brief, but I might have overlooked it. I spoke to the waiver issue. I'm looking at it right now. You just talk about that the definition of sale and sell contained in 29 U.S.C. 203k encompasses leases. On page 16 and 17 is where I deal with the sale for resale, and I don't see here that we made an argument that that issue has been waived. We just made the argument I just made to you that simply is not what is intended by the notion of a sale for resale. I would point out to one other regulation in that regard to support my argument, that the question is really why it's being purchased. It's not whether ultimately the car will be sold again. Every car is going to be sold again at some point unless it's a total directive of a new car. 779.331 talking about this refers to the issue being whether the item is being purchased for the purpose of resale. I think that just solves this argument. The fact of the matter is the item in this case on a retail lease or retail sale is being purchased not for the sake of resale, but it's being purchased for the sake of using the car by a consumer. It's just like a purchase. Now, we discussed the other, I think, distinguishing factor between the Chalupnik cases and the rest of the cases, and that is the argument about leasing. We discussed that pretty extensively in our brief, and I'd answer any questions you might have about the leasing issue. We think it's pretty clear that a lease is a sale under the Act. Your position is very clear. Okay. We'll decide whether the position is right. I would add one other thing. We have discovered in preparation for oral argument that the DOL Field Operations Manual contains some language which supports the position that leases are considered to be sales under the Act, and I have that in front of me. I don't want to submit something that's not in the record. I would suggest – Have you notified the other side about this? No, we do not. We do not have an opportunity to do that. At the very most, you're entitled to a 28-day letter of some kind. Okay. We'll do so. We'll send an appropriate notice to the other side before we consider it. If there are no further questions, thank you. No, thank you. Anybody else have anything they'd like to say? I just have one. If I could spend one second addressing leasing. One second? Well, 30 seconds. It was not briefed in our case. I would call the Court's attention to Section 320, which is the list of qualifying establishments that have a retail concept, and one of the establishments listed there is dress suit rental establishments. It would be somewhat ironic if you accepted the plaintiff's argument that rentals and leases are not retail sales, yet the Department has identified a rental establishment precisely as an example of an entity that would fall within this exemption. In addition, Section 779-371, which deals with auto dealers, discusses things that fall outside of retail concepts, and two of the areas they discuss are sales and long-term leases for fleet purposes and sales and long-term leases of heavy trucks, which would suggest that they treat long-term leases and sales simultaneously and in the same context. That's it, Your Honor. Thank you. Does the Department of Labor have anything it would like to add? No, Your Honor. Thank you all. This has been very helpful, and the three cases that we've just discussed are ordered submitted. We'll be in recess until tomorrow morning at 9 o'clock. Thank you.
judges: Trott, Kleinfeld, Pollak